# HELEN GREEN *v.* COPPERSTONE LIMITED PARTNERSHIP

[No. 40, September Term, 1975.]

*Decided November 4, 1975.*

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

*Steven J. Fox* and *Gerald R. Walsh,* with whom were *Talkin & Abramson* on the brief, for appellant.

*Louis A. Becker,* with whom were *Lewis Straughn Nippard* and *Sybert, Sybert & Nippard* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

This case reaches us on certiorari to the Circuit Court for Howard County. The litigation had been initiated by Copperstone Limited Partnership (Landlord) against Helen Green (Tenant) in the District Court for Howard County by a Complaint in Ejectment-Tenant Holding Over, under Real Property Article § 8-402 [1] of the Annotated Code of

---

1. Real Property Article § 8-402 in part here pertinent reads as follows:
   "§ 8-402. Holding over.
   (b) *Notice to quit.* — (1) Where any interest in property shall be leased for any definite term or at will, and the landlord shall desire to repossess the property after the expiration of the term for which it was leased and shall give notice in writing one month before the expiration of the term or determination of said will to the tenant or to the person actually in possession of the property to remove from the property at the end of the term, and if the tenant or person in actual possession shall refuse to comply therewith, the landlord may make complaint thereof in writing to the District Court of the county where the property is located. The court shall forthwith issue its summons to the tenant or person in possession that he be and appear on a day stated in the summons before the court to show cause (if any he have) why restitution of the possession of the said estate so leased should not be forthwith made to the landlord. Upon the failure of either of the parties to appear before the court on the day stated in the summons, the court shall continue the case to a day not less than six nor more than ten days after said day so first stated and notify the parties of such continuance.
   (2) If upon hearing the parties, or in case the tenant or person in

Maryland. After hearing in the District Court, judgment of restitution of leased premises to the landlord was extended. Tenant appealed to the Circuit Court for Howard County. After hearing on appeal, monetary judgment against tenant and a warrant of restitution to landlord was entered in the Circuit Court. A stay of execution of judgment was granted pending petition for certiorari.

Tenant occupied apartment 4 of 5858 Stevens Forest Road, Columbia, Maryland under a written lease executed by both landlord and tenant. The lease, dated December 17, 1971, was for the term of twelve (12) months beginning on that

possession shall neglect to appear after the summons and continuance the court shall find that the landlord had been in possession of the leased property, that the said lease or estate is fully ended and expired, that due notice to quit as aforesaid had been given to the tenant or person in possession and that he had refused so to do, the court shall thereupon give judgment for the restitution of the possession of said premises and shall forthwith issue its warrant to the sheriff or a constable in the respective counties commanding him forthwith to deliver to the landlord possession thereof in as full and ample manner as the landlord was possessed of the same at the time when the leasing was made, and shall give judgment for costs against the tenant or person in possession so holding over. Either party shall have the right to appeal therefrom to the circuit court for the county, or the Baltimore City Court within ten days from the judgment. If the tenant appeals and files with the District Court an affidavit that the appeal is not taken for delay, and also a good and sufficient bond with one or more securities conditioned that he will prosecute the appeal with effect and well and truly pay all rent in arrear and all costs in the case before the District Court and in the appellate court and all loss or damage which the landlord may suffer by reason of the tenant's holding over, including the value of the premises during the time he shall so hold over, then the tenant or person in possession of said premises may retain possession thereof until the determination of said appeal. The appellate court shall, upon application of either party, set a day for the hearing of the appeal, not less than five nor more than 15 days after the application, and notice for the order for a hearing shall be served on the opposite party or his counsel at least five days before the hearing. If the judgment of the District Court* shall be in favor of the landlord, a warrant shall be issued by the appellate court to the sheriff, who shall proceed forthwith to execute the warrant.

\* \* \*

(4) The provisions of § 8-402 (b) shall apply to all cases of tenancies from year to year, tenancies by the month and by the week."

---

\* Patently, "District Court" should read "appellate court".

date, at a monthly rental of $137.00. Landlord and tenant agreed that the fair market rental of the premises was $215.52 monthly. Paragraph 4 of the lease read as follows:

"4. Unless terminated as provided herein, this lease shall be automatically renewed for successive terms of one month each at the aforesaid rental, subject to adjustment as herein provided, payable in advance without demand on the first day of each month. Either party may terminate this lease at the end of the initial term or any successive term by giving 3C days written notice in advance to the other party."

After tenant had continued in possession under that lease for almost three years she received the following letter by certified mail:

"September 5, 1974

Ms. Helen Green
5858-4 Stevens Forest Road
Columbia, Maryland 21045

Dear Ms. Green:

This letter is to constitute a thirty-day (30-day) written notice of our intent to terminate the month-to-month lease agreement between yourself and Copperstone Limited Partnership, as called for in Page 2, Paragraph 4, of your lease for the unit at 5858-4 Stevens Forest Road, and to notify you that you must vacate the premises on or by October 31, 1974. Should you fail to do so, you will be considered a tenant holding over, and appropriate measures will be instituted.

It is our duty, under the law, to advise you that if you hold over beyond the expiration of this term ending October 31, 1974, you can be held liable for double the amount of rent apportioned for the duration of the hold-over.

Your monthly rent for September and October must be paid as usual per your lease agreement.

Failure to do so will afford immediate appropriate legal action prior to the October 31st termination date.

Sincerely,
PATRICIA L. WEYHRAUCH
Resident Manager
Copperstone Circle Apartments."

When tenant refused to vacate the premises on October 31, 1974, the landlord filed its complaint in the District Court for Howard County seeking restitution of the premises pursuant to the cited provisions of the Annotated Code of Maryland.

For reasons that will become apparent we emphasize at this point that both the notice to the tenant and the complaint against her for restitution as filed in the District Court declared that expiration of the term of the lease was the sole ground for termination of the tenancy, and *no other cause was assigned.*

The case presents the issues: (a) whether an apartment complex developed pursuant to section 236 of the National Housing Act (12 U.S.C.A. § 1715z-1, et seq.) involves such government action that a landlord must assure due process of law before eviction of a tenant may occur; (b) whether the appellant, as a tenant in such a facility, acquired such a property right as entitled her to the protection accorded by the due process of law provisions of the Fifth or Fourteenth Amendments to the Constitution of the United States; and (c) whether eviction may be based solely upon expiration of a lease.

Appellant tenant contends that procedural due process demands that there be notice of eviction and a hearing to determine if good cause exists for eviction, and that the mere expiration of the term of a lease is not good cause. Appellant concedes that the provisions for a hearing set forth in the Real Property Article § 8-402 comply with procedural due process requirements, if notice and proof at the hearing demonstrate good cause for eviction.

Appellee landlord contends that the litigation is between

private parties contesting their respective contractual rights under a Maryland statute authorizing eviction, after notice, when the term of the lease has expired, and that there is no constitutional bar to her eviction.

Section 236 of the National Housing Act, as amended, (12 U.S.C.A. § 1715z-1) is a statutory scheme seeking to achieve improved housing at reduced rentals for low and middle income families. The statutory aim is accomplished in part by governmental rent supplements to some tenants and in part by periodic federal government payments of interest for owners to mortgagees who meet the special requirements of the section. Among project owners authorized to participate in the statutory scheme are limited dividend corporations or other limited entities.[2] Tenants of a section 236 facility include some who receive rent supplement payments;[3] and some whose monthly rent is on a sliding scale, depending on income, not less than a basic monthly rental charge and not more than a fair market monthly rental charge.[4] The tenant in the subject case pays only the basic monthly rental charge but does not receive a rent supplement.

In sum, landlord is a limited dividend owner of a multi-family apartment complex developed pursuant to section 236 of the National Housing Act (Title 12 U.S.C.A. § 1715z-1-6) and tenant derives benefits under that section by virtue of being required to pay only the basic monthly rental of $137.00, rather than the fair market rental of $215.52.

---

2. 12 U.S.C.A. § 1701s, as amended. Such limited dividend entities are limited to 6% return on initial equity investment. 24 C.F.R. § 221.532.

N.B. We take judicial notice of public statutes of the United States and of those government regulations published in the Federal Register (of which the Code of Federal Regulations forms a part). Hettleman v. Frank, 136 Md. 351, 110 A. 715; 1 U.S.C.A. § 204; 44 U.S.C.A. 1507, 1510.

3. 24 C.F.R. 215.10.

4. 24 C.F.R. 236.55 in pertinent part reads as follows:

"(1) A basic monthly rental charge determined on the basis of operating the project with payments of principal and interest due under a mortgage bearing interest at the rate of 1 percent per annum.

(2) A fair market monthly rental charge determined on the basis of operating the project with payments of principal, interest, and mortgage insurance premium which the mortgagor is obligated to pay under the mortgage."

In the subject project twenty-five tenants are subsidized by government provided rent supplements. The remaining one hundred seven tenants pay rent based on income,[5] varying from $137.00 to $215.52 monthly.

Tenant acknowledges that she received the letter notice dated September 5, 1974, *supra*, and that she executed a lease that included the provisions contained in paragraph 4 thereof, *supra*. She contends, however, that such paragraph 4 is invalid as applied to tenancies arising under section 236 of the National Housing Act. Landlord acknowledges that the apartment was constructed under section 236 of the National Housing Act, as amended.

That the Fifth and Fourteenth Amendments affect only Federal and State action, and do not relate to the conduct of private individuals is firmly fixed by decisions of the Supreme Court. The Fifth Amendment "is a limitation only upon the powers of the general government." *Talton v. Mayes*, 163 U. S. 376, 382, 16 S. Ct. 986, 988, 41 L. Ed. 196, 198. It is not directed against the action of individuals. *Corrigan v. Buckley*, 271 U. S. 323, 46 S. Ct. 521, 70 L. Ed. 969. The prohibitions of the Fourteenth Amendment "have reference to state action exclusively, and not to any action of private individuals." *Virginia v. Rives*, 100 U. S. 313, 318, 25 L. Ed. 667, 669. "It is state action of a particular character that is prohibited. Individual invasion of individual rights is not the subject matter of the Amendment." *Civil Rights Cases*, 109 U. S. 3, 11, 3 S. Ct. 18, 21, 27 L. Ed. 835, 839. "It is obvious that [neither] of these amendments prohibited private individuals from entering into contracts respecting the control and disposition of their own property. * * *" *Corrigan v. Buckley, supra*, at 330 [972].

Thus, it would appear at first blush that the subject case involves no Fifth and Fourteenth Amendment issue.

There are, however, Supreme Court decisions exemplified

5. "The monthly rental for each dwelling unit shall be 25 percent of the tenant's adjusted monthly income, except that the monthly rental shall not be less than the basic rental nor more than the fair market rental charge. In the event of any change in a tenant's income, the monthly rental charge shall be adjusted by the mortgagor." (24 C.F.R. § 236.55 (b).)

by *American Communications Asso., C.I.O. v. Douds,* 339 U. S. 382, 70 S. Ct. 674, 94 L. Ed. 925, declaring that:

> " * * * when authority derives in part from Government's thumb on the scales, the exercise of that power by private persons becomes closely akin, in some respects, to its exercise by Government itself." (at 401, [945])

Thus in *Public Utilities Comm. v. Pollak,* 343 U. S. 451, 72 S. Ct. 813, 96 L. Ed. 1068, the Capital Transit Company, a privately owned corporation contracted with a privately owned radio broadcasting company for radio programs to be received and amplified in busses operated by the transit company. Protesting passengers who were compelled to listen, argued that their Fifth Amendment right to liberty was infringed. The Supreme Court, although denying that the facts showed violation of Fifth Amendment rights, acknowledged its obligation to pass upon the constitutional issue, saying in 343 U. S. at 461, 72 S. Ct. at 820, 96 L. Ed. at 1076-77:

> "It was held by the court below that the action of Capital Transit in installing and operating the radio receivers, coupled with the action of the Public Utilities Commission in dismissing its own investigation of the practice, sufficiently involved the Federal Government in responsibility for the radio programs to make the First and Fifth Amendments to the Constitution of the United States applicable to this radio service."

adding in 343 U. S. at 462, 72 S. Ct. at 820, 96 L. Ed. at 1077:

> "We find in the reasoning of the court below a sufficiently close relation between the Federal Government and the radio service to make it necessary for us to consider those Amendments."

Tenant urges that the Fifth and Fourteenth Amendments protect her valuable property right from invasion by action of landlord because the authority of the latter derives "from Government's thumb on the scales."

The seminal case involving constitutional limitations upon private owners of apartment projects developed under the provisions of the National Housing Act is that of *Joy v. Daniels,* 479 F. 2d 1236 (4th Cir. 1973). That case arose under Section 221 of that Act [6] under facts thus summarized by the Court (at 1238):

"On September 2, 1970, plaintiff leased one of defendant's apartments. The standard form lease provided in relevant part:

'At the end of one year, lease is automatically renewed from month to month, rent to be payable in advance without demand on first day of each month. Either party may terminate lease at end of term or any successive term by giving 30 days' notice in advance to other party.'

On September 11, 1971, the defendant gave plaintiff 30 days' notice to vacate, no cause being assigned. It appears that the plaintiff has continued to occupy her apartment on a month-to-month basis, with her tenancy dependent on the outcome of this litigation.

"Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715l(d)(3) (1971), is a statutory scheme for encouraging housing for low income families. To participate in this program, defendant was required to conform to a regulatory agreement with the Federal Housing Administration governing, inter alia, the construction, occupancy, and daily operations of the project. The FHA also grants defendant rent supplements for the plaintiff and other tenants under Section 101 of the Housing and Urban Development Act of 1965, 12 U.S.C. § 1701s(b) (1971). Plaintiff, for example, enjoys

---

6. Section 221 is codified in 12 U.S.C.A. § 1715l. Regulations adopted in its implementation are codified in 24 C.F.R. § 221.1-221.790. All except 21 sub-sections of those regulations are incorporated by reference into § 236 regulations. The textual differences between Section 221 and Section 236 projects are miniscule.

occupancy of an apartment worth $157.00 per month at a cost to her of $48.00. FHA pays the difference, *i.e.*, $109.00 per month, directly to defendant. As a prerequisite to participation in the rent supplement program, there must be local government approval. 24 C.F.R. § 5.15(c) (1971). The County Council specifically approved rent supplements for Joseph Paul Apartments on August 6, 1968." [7]

The Court, concluding that State action had " 'so far insinuated [the state] into a position of interdependence' with the defendant that the challenged activity 'cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment' " declared: (at 1239)

"Accordingly, we hold there is sufficient state involvement to constitute 'state action' for purposes of the fourteenth amendment."

The Court in *Joy* then discussed in considerable depth the rights of the tenant; the congressional purposes sought to be served by passage of § 221; and the regulations adopted to carry out those purposes, saying at 1239, *et seq.*:

"The district court concluded that plaintiff had no right of occupancy upon expiration of the term of the lease. Plaintiff contends that despite expiration of the term she may be evicted only for 'good cause' and is entitled to the protection of procedural due process in the determination of whether cause exists. Since procedural due process applies only to the deprivation of interest protected by the fourteenth amendment, *i.e.*, liberty and property, we must first determine plaintiff's substantive rights. *See* Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *McQueen*, 317 F.Supp. at 1128.

**7.** Local government approval seemingly no longer is a requisite, § 5.15 (c) not appearing in 24 C.F.R. revised as of April 1, 1975.

"As stated in Board of Regents v. Roth:

'Certain attributes of "property" interests protected by procedural due process emerge from [the Court's] decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

'Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or under-standings that stem from an in-dependent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'

408 U. S. at 577, 92 S. Ct. at 2709.

'A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.'

Perry v. Sinderman, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Thus we must now look to applicable statutes, governmental regulations, and the custom and understandings of

public landlords in the operation of their apartments to determine if a public tenant has a 'property interest' in a tenancy beyond the term of the lease except for cause.

"When Congress legislated with regard to mortgage insurance benefits which defendant receives, it provided: 'The Congress affirms the national goal, as set forth in section 1441 of Title 42, of "a decent home and suitable living environment for every American family".' 12 U.S.C. § 1701t. This policy of improving the 'living environment of urban areas' was also the policy of Congress in enacting the Housing and Urban Development Act of 1965. Pub.L. 89-117, 79 Stat. 451 (Aug. 10, 1965). 'This [policy] includes adequate, safe, and sanitary quarters. But it also implies an atmosphere of stability, security, neighborliness, and social justice.' *McQueen*, 317 F.Supp. at 1130. *Cf.*, Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

"In addition to the policy statements contained in the relevant funding statutes, Congress has also expressed itself in part on how these programs should be run. 'No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' 42 U.S.C. § 2000d. The policy of this statute, a person's right to be free of invidious discrimination in federally assisted programs, is contained in many statutes, *see, e.g.*, 42 U.S.C. § 2000a.

'This legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law.'

Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390-391, 90 S.Ct. 1772, 1782, 26 L.Ed.2d 339 (1970).

"Not only the statutes, but also FHA regulations authorized under 12 U.S.C. § 1701s(f), imply a right to be free from arbitrary and discriminatory action. For example, 24 C.F.R. § 221.-536 (1971) provides that a landlord in a § 221(d)(3) apartment may not discriminate against any family because of children.

The House Report dealing with the Housing and Urban Development Act of 1965 said, with regard to the rent supplement program:

'If his income increases sufficiently so that he can pay the full economic rent with 25% of his income, rent supplement payments on his behalf would cease to be made. The tenant could, however, continue to live in the project and would not be required to pay more than the full economic rent.'

H.R. Rep. No. 365, 89th Cong., 1st Sess. (1965), 1965 U.S.Code Cong. and Ad. News, pp. 2614, 2618. This suggests the Congress was contemplating more occupancy entitlement than limited leasehold terms.

"The tenant's expectation of some degree of permanency, seemingly shared by the Congress, if not by the landlord, is bolstered by 'custom.' Just as there may be a 'common law' of tenure at a college or university, there may be a common law of tenancy in public housing projects. *See Perry*, 408 U.S. at 602, 92 S. Ct. 2694.

'The actual workings of the subsidized housing program must be examined to determine whether there is a reasonable basis for tenants to expect that in normal circumstances they will be permitted to remain in the housing indefinitely. And indeed one finds that the normal practice in subsidized housing, as in

private housing, is to permit tenants to remain beyond the expiration of a lease unless a reason has arisen for eviction; termination is the exception, not the rule. Thus tenants do have a reasonable expectation deserving of protection.'

Note, Procedural Due Process in Government — Subsidized Housing, 86 Harv. L.Rev. 880, 905 (1973)." (Footnotes omitted.)

The Court then held: (at 1241)

"In view of the congressional policies of providing a decent home (with stability and security) for every American family, and of prohibiting arbitrary and discriminatory action, bolstered by the FHA regulations and custom, we find in the scheme of the National Housing Act and the Housing and Urban Development Act of 1965 a property right or entitlement to continue occupancy until there exists a cause to evict other than the mere expiration of the lease. We therefore hold that the lease provision purporting to give the landlord power to terminate without cause at the expiration of a fixed term is invalid."

and added at 1242:

"To allow a quasi public landlord to evict upon expiration of a fixed term is to enable secret and silent discrimination and would wholly emasculate the procedural safeguards of *Caulder*.[8]

---

**8.** Caulder v. Durham Housing Authority, 433 F. 2d 998 (4th Cir. 1970) cert. den. 401 U. S. 1003. *Caulder* had said (at 1004):

"Succinctly stated, *Goldberg* [Goldberg v. Kelly, 397 U.S. 254] requires (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker."

We do not differ with this portion of the decision in *Caulder*. We repudiate,

In *Joy, supra,* decision was grounded upon the Fourteenth Amendment. In the subject record we perceive no evidence of State action or involvement save the use of State statutory eviction procedures. We believe that this circumstance, standing alone, would not constitute such State action as to give rise to Fourteenth Amendment protection. *McGuane v. Chenango Court, Inc.,* 431 F. 2d 1189 (2nd Cir. 1970), cert. den. 401 U. S. 994.

Such a conclusion does not, however, resolve the issues that confront us. In *Short v. Fulton Redevelopment Co.,* 390 F. Supp. 517 (U.S.D.C. S.D. N.Y. 1975), a § 221 project; and in *Anderson v. Denny,* 365 F. Supp. 1254 (U.S.D.C. W.D. Va. 1973), a § 236 project, issues identical to those in *Joy* were presented. However, the position taken in *Joy* was sustained in *Short* and *Anderson,* not only upon Fourteenth Amendment grounds but also upon Fifth Amendment grounds.

*Anderson, supra,* is particularly noteworthy because of its discussion of the interdependence of the Federal Government and owners of projects developed under § 236. The Court said at 1256-57:

"The question is thus whether the state or the federal government, or both, have become so involved in the conduct of this otherwise private enterprise that its actions are also the actions of these governments and performed under their aegis without the private body necessarily becoming either their instrumentality or their agent in a strict sense. Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). Decision on this question requires consideration of § 236 of the National Housing Act of 1968 as well as the involvement of the state and local governments in the activities of the defendants.

"The benefits received from the federal

---

however, that portion of the decision indicating that the issue of due process may not be litigated in State courts.

government by qualifying as a § 236 project include reduction in the interest rate paid on the mortgage to one percent per annum, rent supplements for 20% of the tenants, provision for up to 95% of the funds needed during construction by the Federal National Mortgage Association in participation with an originating mortgagee, provision for the purchase of the mortgage by the Federal National Mortgage Association or the Government National Mortgage Association upon completion of construction, guaranteed builders' fees, and certain tax benefits including accelerated depreciation with limited recapture as ordinary income.

"Quite understandably such inducements to private enterpreneurs to encourage them to provide housing for low income families result in federal control. The statute pursuant to which Oak Ridge Gardens qualified for federal subsidies provides that the owners 'shall operate the project in accordance with such requirements with respect to tenant eligibility and rents as the Secretary may prescribe.' 12 U.S.C. § 1715z-1(e). In addition, the Secretary is given the power 'to make such rules and regulations, to enter into such agreements, and to adopt such procedures as he may deem necessary or desirable to carry out the provisions of the statute.' 12 U.S.C. § 1715z-1(h). Restrictions on the management of § 236 projects are set forth in 24 C.F.R. § 236.1 et seq. The defendants in this case are restricted in the following particulars among others: (1) the amount of rent that may be charged; (2) admission to the project is limited to persons of specified income levels; (3) the landlord cannot discriminate on account of children in a family; (4) preference in admission must be given to families displaced by government activities; (5) the landlord cannot convey, transfer or encumber the property; (6) without written approval of the Federal Housing Administration, the landlord cannot convey a beneficial interest in the property or convey a right

to manage it or collect its rent nor can he remodel, add to or destroy a portion of the property; (7) the landlord must maintain the mortgaged property in good condition subject to FHA inspection; (8) the owners cannot voluntarily go into bankruptcy; and (9) the owners must furnish monthly occupancy reports and must answer questions relative to income, assets, liabilities, contracts, operation and condition of the property and the status of the mortgage."

adding at 1258-59:

"Beyond the mere relationship of Oak Ridge Gardens to the state and federal governments in the form of benefits and regulations, the fact that defendants in effect perform a government function by helping to implement the congressional policy of providing decent housing to low income families makes their actions subject to constitutional limitations. See Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). Related to the theory that defendants are performing a government function is the idea that defendants have the power to deprive their tenants of government benefits. It is clear that tenants at Oak Ridge Gardens must meet certain income requirements and that they receive a government subsidy amounting to the difference in their rental payments and the market value of comparable housing. Eviction of a tenant obviously results in a deprivation of this benefit which can fairly be described as a necessity. It follows that the defendants, by electing to act as a means of distributing these government subsidies, have made themselves government actors for purposes of the Fifth and Fourteenth Amendments. See

Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)."

The Court then said at 1260:

"Accordingly, this court concludes that as a matter of substantive federal law the tenants at Oak Ridge Gardens have a property interest in their tenancies and cannot be evicted except for good cause.

"This substantive right not to be arbitrarily evicted on the mere expiration of a lease, in turn requires that a tenant be afforded the following protections: (1) timely notice specifying the reasons for the eviction; (2) an opportunity to confront and cross-examine adverse witnesses and present his own evidence; (3) the right to retain an attorney; and (4) the right to an impartial decision based solely on the evidence adduced at the hearing."

In *Lopez v. Henry Phipps Plaza South, Inc.*, 498 F. 2d 937 (2nd. Cir. 1974), although factually dissimilar and invoking other sections of the National Housing Act, the Court spoke with clarity as to evictions solely grounded upon lease termination, saying at 943:

"The federal government, the states and the cities which have extended aid to low and middle income housing hardly expected that a tenant could be evicted at the end of his term simply at the landlord's whim, when substitute housing could be obtained, if at all, only with delay, disruption in living habits and expense. *Cf.* Morrissey v. Brewer, 408 U.S. 471, 479, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Purely private housing is, of course, a different matter, see Lindsey v. Normet, 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

The issues now before us have been considered in at least one State Appellate Court. In *Appel v. Beyer*, 39 Cal. App. 3d Supp. 7, Super., Supp. 15, 114 Cal Rptr. 336, 341, dealing with a § 221 project, the Court concurred with the decision in *Joy, supra*, but did so on the basis of federal governmental

action under the Fifth Amendment. The Court in footnote 9 said:

> "In view of our holding that appellants have been denied due process of law because of federal involvement, it is not necessary to consider whether entertainment of these eviction proceedings by our local courts or payment of rent supplements involve 'state' action by California or its agencies."

The decisions in *Joy, Short, Anderson* and *Appel,* all *supra,* are indistinguishable on their facts. The soundness of their reasoning is uncontested by contrary decisions. We shall follow them. In the subject case we are persuaded that the benefits of the landlord and the tenant are the products of government action. As was said in *Appel, supra,* at Supp. 13 [339]:

> "The government is, essentially, the landlord. Without the government, there would be no such low cost housing; with the government, the quality and cost of the housing is such as the government allows."

Here, the federal government has so far insinuated itself into a position of interdependence with the landlord that it must be recognized as a joint participant in the landlord-tenant relationship. *Burton v. Wilmington Parking Authority,* 365 U. S. 715, 725, 81 S. Ct. 856, 862, 6 L.Ed.2d 45, 52. Thus, the scope of government involvement brings the subject case within the ambit of the Fifth Amendment. By reason of this the tenant has a property right of entitlement to continued occupancy until there exists a cause to evict other than the mere expiration of the lease. An effort to evict a tenant from a § 236 project without notice and proof of good cause is invalid.

Appellee landlord, asserting an alternative position, asks us to hold that in any event due process was accorded because proper notice and good cause for eviction was shown. There was, indeed, some evidence that the apartment had sustained substantial physical damage inferentially

attributable to the tenant's misconduct. It was shown also that written demands for payment of the costs of necessary repairs had been made upon the tenant. We have previously pointed out, however, that neither the notice by the landlord to the tenant to vacate, nor the allegations in the complaint by which her eviction was sought had set forth any cause save expiration of the term of the lease. Thus, even if we assume, without deciding, that the conduct of the tenant was such as to justify eviction, neither notice nor pleadings have alleged that cause for such action existed. The tenant is entitled to be explicitly informed of the grounds upon which her eviction is sought. Moreover, the record makes clear that the judgment of the trial court was entered on the basis that the landlord was not required to show more than that the term of the lease had expired and that notice to vacate had been given.

Our holding is limited solely to these propositions: (a) that landlord is bound to assure due process to the tenant; (b) that due process requires a hearing and proof of good cause for eviction after notice of the grounds upon which eviction is sought and (c) that mere expiration of the term of a lease is not such good cause.

We find no constitutional impediment to utilizing summary Maryland statutory eviction procedures provided proper notice is given and good cause for eviction is shown at hearing. *Joy v. Daniels, supra; Appel v. Beyer, supra.*

> *Judgment reversed.*
> *Appellee to pay the costs.*