Addie WIGGINS, et al.

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.

Thurman HILL, Jr., et al.

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.

Civ. Nos. K-80-1030, K-80-2914.

United States District Court, D. Maryland.

Oct. 2, 1981.

Kenneth Montgomery, Robert McCaig and Kathleen C. Murray, Baltimore, Md., for plaintiffs in Nos. K–80–1030 and K–80–2914.

John C. Eidleman, Baltimore, Md., for plaintiffs in No. K–80–2914.

J. Frederick Motz, U. S. Atty., and Elizabeth H. Trimble and Ellen Hollander, Asst. U. S. Attys., Steven M. Goldstein, U. S. Dept. of Housing and Urban Development, Washington, D. C., for defendants U. S. Dept. of Housing and Urban Development and Samuel Pierce,[1] Secretary of the U. S. Dept. of Housing and Urban Development in Nos. K–80–1030 and K–80–2914.

Howard Cassin, Baltimore, Md., for defendant Lakeside Apartments Partnership Limited, in No. K–80–1030.

Samuel Blibaum, Baltimore, Md., for defendant Fairbrook Park Apartments Co., in No. K–80–2914.

## FRANK A. KAUFMAN, Chief Judge.

Plaintiffs, who, pursuant to Section 8 of the United States Housing Act of 1937 as amended, 42 U.S.C. § 1437f, are recipients of public housing assistance to tenants residing in existing housing units, ask this Court to declare invalid certain regulations promulgated by the Secretary of Housing and Urban Development (HUD) (which appear at 24 C.F.R. Part 886, Subpart A) as violative of Section 8 and due process of law.[2] HUD has moved to dismiss, under Federal Civil Rule 12(b)(6), the complaints in these two cases.

The named plaintiffs have each received, during the past three years, one or more notices terminating their respective tenancies.[3] Those notices came from plaintiffs' respective landlords (*i. e.* defendants Lakeside and Fairbrook), rather than from HUD or from any local public housing agency (PHA).[4] Plaintiffs contend that either HUD or a local PHA must give such notices. Plaintiffs further contend that, before giving any such notice, HUD or the PHA must conduct a hearing. HUD argues that it has discretion to allow plaintiffs' landlords to provide any such notice, and that no administrative hearing of any kind is required.[5]

1. Substituted *sua sponte* for the prior Secretary by this Court as per Federal Civil Rule 25.

2. The within two cases have been consolidated pursuant to Federal Civil Rule 42(a). Plaintiffs bring both actions on behalf of themselves and others similarly situated.

One of the named plaintiffs, Thurman Hill, Jr., has vacated his housing unit since the institution of these suits. Additionally, certain procedures have been followed with regard to plaintiff Addie Wiggins only by agreement of the parties. Accordingly, the cases may be moot as to Hill and perhaps Wiggins. *But see Sosna v. Iowa,* 419 U.S. 393, 401–2, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975). However, in any event, the claims of two other named plaintiffs, Zenia Cooper and Paulette Chambers are still live, and those two persons are therefore entitled to be, and are treated and considered as, named class action representatives in these two consolidated cases.

The plaintiff class certified in these consolidated cases consists of all persons in the State of Maryland who reside in any existing subsidized or unsubsidized multi-family residential project which is subject to a mortgage insured pursuant to any section of the National Housing Act, any project the mortgage for which has been assigned to HUD, any such project acquired by HUD and thereafter sold under a HUD-held purchase money mortgage, or a project for the elderly financed under Section 202 of the Housing Act of 1959, and on whose behalf Housing Assistance Payments are made under Section 8 Project Commitments pursuant to provisions of Section 8.

3. Addie Wiggins has received four notices of termination of tenancy in the past four years. *See* defendant Lakeside's answer to interrogatory number 11. Zenia Cooper received two such notices in 1980. *See* defendant Lakeside's answer to interrogatory number 13. Thurman Hill, Jr. has received two such notices since September, 1980. Paulette Chambers has received one such notice since January, 1981.

4. Defendant Lakeside described its procedures for issuing notices of termination in its answers to interrogatories numbers 9, 13, and 15. Lakeside's management personnel makes the decision to issue this notice. That decision is usually based on personal, firsthand knowledge, but is sometimes based on written communications from third parties.

5. During a hearing on April 10, 1981, and in subsequent proceedings, HUD took the position that if, contrary to its contentions, HUD is under a statutory duty to provide appropriate

## I.

Section 8 was first enacted in its present form in 1974. It created different forms of housing assistance programs depending upon whether the tenant lived in a newly constructed, rehabilitated, or existing building unit. The purpose of Section 8 is to "aid [ ] lower-income families in obtaining a decent place to live and [to] promote economically mixed housing * * *."[6] Recipients of benefits reside in privately-owned housing units, the owners of which contract directly with either HUD or a local PHA.[7] Section 1437f(b)(1) provides:

> * * * In areas where no public housing agency has been organized or where the Secretary determines that a public housing agency is unable to implement the provisions of this section, *the Secretary is authorized to enter into such contracts and to perform the other functions assigned to a public housing agency by this section.*[8]

(Emphasis supplied)

Housing Assistance Payment (HAP) contracts between an owner and HUD or between an owner and the PHA establish a maximum rent which the owner may charge for each assigned unit.[9] The tenant

pays some fixed percentage of the tenant's income to the owner, and HUD or the PHA pays to the owner the remainder of the rent.[10] Certain parts of Section 8 provide for certain terms to be included in the HAP contracts. Among them is Section 1437f(d)(1), which provides:

> (d)(1) Contracts to make assistance payments entered into by a *public housing agency* with an owner of existing housing units *shall* provide (with respect to any unit that—
>
> \* \* \* \* \* \*
>
> (B) *the agency shall have the sole right to give notice to vacate, with the owner having the right to make a representation to the agency for termination of tenancy;* * * *.

(Emphasis supplied)

Section 1437f(e) deals with housing assistance to those who live in newly constructed or substantially rehabilitated housing (as opposed to existing housing). Subsection (2) thereof provides:

> The contract between the Secretary and the owner with respect to newly constructed or substantially rehabilitated dwelling units shall provide that all own-

---

procedural protections prior to authorizing evictions, then HUD will give the named plaintiff an opportunity to respond to HUD within 10 days if the owner submits a notice to HUD and the tenant requesting that HUD issue a notice to quit, detailing the grounds upon which the owner relies to support his allegation that good cause exists, and stating all of the facts including dates, times, places, identity of witnesses and the nature and source of complaints which the landlord intends to use in state court to prove good cause for eviction. Thereafter, HUD will consider both the owner's representations and the representations of the tenant. Finally, HUD will issue a notice to the tenant to vacate if and only if the proposed notice complies with statutory and regulatory requirements and if and only if HUD determines that there is a sufficient factual basis to justify the owner in seeking a judicial determination that the tenant acted as alleged and that the tenant's said acts constitute appropriate cause to enable the owner to terminate the tenancy.

HUD's primary position is that it has no statutory duty to take part in the eviction process. HUD's secondary position is that if HUD has any such duty, its duty is discharged by

following the procedure set out *supra* in this footnote 5 and that in any event HUD is not required to hold an administrative hearing. Plaintiff's position is that HUD has a statutory duty to hold an administrative hearing which itself comports with the due process requirements of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), regardless of whether the Maryland courts afford a pre-eviction hearing which satisfies the demands of due process of law.

6. 42 U.S.C. § 1437f(a).

7. *See* 42 U.S.C. § 1437f(b)(1).

8. Title 42 U.S.C. § 1437a(6) provides:
   The term "public housing agency" means any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of low-income housing.

9. *See* 42 U.S.C. § 1437f(c)(1).

10. *See* 42 U.S.C. § 1437f(c)(3).

ership, management, and maintenance responsibilities, including the selection of tenants and the *termination of tenancy,* shall be assumed by the owner (or any entity, including a public housing agency, approved by the Secretary, with which the owner may contract for the performance of such responsibilities), except that the tenant selection criteria shall give preference to families which occupy substandard housing or are involuntarily displaced at the time they are seeking housing assistance under this section. In approving any public housing agency to assume all the management and maintenance responsibilities of any dwelling unit under the preceding sentence, the Secretary may do so without regard to whether such agency administers the housing assistance payment contract for that unit.

(Emphasis supplied)

Plaintiffs contend that the implications—at least the negative implications—of the above quoted statutory provisions, require HUD to give termination notices if HUD contracts directly with owners in connection with the *existing* housing program, rather than acting through a local PHA. HUD contends that if HUD contracts directly with owners in connection with any such existing housing program, HUD has discretion to give or to refuse to give termination notices and thus to permit those notices to be given by landlords acting alone without any approval or participation by HUD.

HUD has established several programs under the rubric of Section 8, including the Existing Housing Program,[11] the New Construction Program,[12] the Substantial Rehabilitation,[13] and the Additional Assistance Program (AAP).[14] Plaintiffs in the within cases receive aid under AAP, and raise questions herein with regard to that program only.

AAP was initiated in 1976 to help financially troubled multi-family housing projects subject to HUD-insured or HUD-held mortgages. The HUD Handbook explains how the program differs from the ordinary Existing Housing Program:

> This new program differs from the Section 8 existing housing program as administered by PHAs in several important respects, and is structured so that:
>
> \*   \*   \*   \*   \*   \*
>
> c. the contract is administered by HUD, not the PHA,
>
> d. the PHA role is limited to approval of eviction actions, except that, at the option of the Area/Insuring Office Director, the PHA may perform unit inspections on a contract basis,
>
> \*   \*   \*   \*   \*   \*
>
> f. Insuring Office Directors as well as Area Office Directors are authorized to perform all essential program functions in administering the new program.[15]

HUD's regulations explain the rationale for the difference in administration:

> Since HUD, as part of its loan management activities, is responsible for most of the activities assigned to a PHA in the Section 8 Existing Housing program, duplicative PHA activities are not required. However, because of the PHA's expertise in connection with evictions, the PHA will be invited to perform the function of authorization of evictions, for an agreed fee. In addition, the PHA may be invited to perform inspections of dwelling units, on a fee basis, if HUD determines that such inspections will be performed more efficiently and economically by the PHA. The Contract will be directly between HUD and the Owner, with the PHA as a party for the purpose of supervising evic-

---

11. *See* 24 C.F.R. Part 882.

12. *See* 24 C.F.R. Part 880.

13. *See* 24 C.F.R. Part 881.

14. *See* 24 C.F.R. Part 886.

15. "Section 8 Additional Assistance Program for Projects with HUD-insured or HUD-held Mortgages," HUD Handbook 4351.1 at 1 (March 1976) [Handbook].

tions and for such other purposes as may be negotiated.[16]

When HUD approves the application of an owner to receive benefits under AAP, it advises the local PHA of HUD's intention to enter into such a contract, and invites the PHA to become a party to the contract.[17] No PHA in Maryland has accepted that invitation from HUD.[18]

The regulations governing evictions under the AAP which plaintiffs challenge are set out in 24 C.F.R. § 886.128:

§ 886.128 Evictions.

(a) The Owner shall not evict the Family unless the Owner complies with the requirements of local, if any, and of this section. The Owner shall give the Family a written notice of the proposed eviction, stating the grounds and advising the Family that it has 10 days (or such greater number, if any, that may be required by local law) within which to respond to the Owner.

(b) Where a PHA is a party to the Contract between the Owner and HUD, the Owner must obtain the PHA's authorization for an eviction; accordingly, a copy of the notice shall be furnished simultaneously to the PHA, and the notice shall also state that the Family may, within the same time period, present its objections to the PHA in writing or in person. The PHA shall forthwith examine the grounds for eviction and shall authorize the eviction unless it finds the grounds to be insufficient under the Lease. The PHA shall notify the Owner and the Family of its determination within 20 days of the date of the notice to the Family, whether or not the Family has

presented objections to the PHA. If the Owner has not received a response from the PHA within 20 days, he shall telephone the PHA and shall be informed by the PHA whether a notice of determination has been mailed. If the PHA informs the Owner that no notice has been mailed within the 20-day period, the PHA shall be deemed to have authorized the eviction. The PHA shall be entitled to a fee as provided in the Contract for each proposed eviction action submitted by the Owner and reviewed by the PHA.[19]

Section 8 seemingly establishes that HUD *may* assume the role of the PHA in contracting with owners of existing housing and that HUD *may* perform other functions including the issuance of notices of eviction. However, the statute is ambiguous as to whether HUD *must* give eviction notices to those residing in existing housing when HUD contracts directly with the owner. In the light of that ambiguity, the legislative history requires examination.

The House Committee Report accompanying the 1974 enactment stated:

The administration of the section 23(h) program would vary depending on whether the dwelling units involved were existing or newly constructed. Owners of existing housing would deal primarily with local public housing agencies which would select them and contract with them to make assistance payments (made available through annual contributions contracts between the Secretary and the public housing agency), for the purpose of reducing rentals to lower income tenants. The management and maintenance of the

16. *See* 24 C.F.R. § 886.101(b).

17. *See* Handbook, *supra*, at 16.

18. *See* HUD's answers to interrogatories number 1(i).

19. The regulations pertaining to evictions under the ordinary Existing Housing Program, which are set out at 24 C.F.R. § 882.215, are nearly identical to those set forth in § 886.-128(b). In *Brown v. Harris*, 491 F.Supp. 845 (N.D.Cal.1980), Judge Ingram held that those regulations relating to "ordinary" programs were invalid because they conflicted with Sec-

tion 8, in that that statute requires that the PHA itself issue the termination notice rather than delegating that duty to the owner. In *Jeffries v. Georgia Residential Finance Authority*, 503 F.Supp. 610, 618 (N.D.Ga.1980), Judge Hall indicated agreement with *Brown*, and stated that § 882.215 "is in fatal conflict with the statute enacted by Congress." HUD has proposed a new § 882.215, which would provide that the PHA itself would give the termination notice. *See* 45 Fed.Reg. 72697 (November 3, 1980).

units would be determined by the owner and the local agency in the same manner as determined under the current section 23 leased housing program. *In areas where a public housing agency has not been organized, the Secretary would perform these functions.*

Owners or prospective owners of housing to be constructed or substantially rehabilitated would be selected by the Secretary who would contract with them to make assistance payments. Management responsibilities would be assumed by the owner who may subcontract them to an entity approved by the Secretary. A public housing agency, however, may be approved by the Secretary to assume management responsibilities and to select and contract with the owner.

The committee believes that it has achieved a sound balance in the administration of the program by providing for the use of established public housing agencies for purposes for which they are best suited and by authorizing the Secretary to expand the role of those agencies which have the appropriate capacity.

(Emphasis supplied).[20] Although the House Committee Report did not refer specifically to evictions, its use of the word "would" in the context of "the Secretary would perform these functions" suggests (but does not compel) the conclusion that HUD *must* assume the full role of the PHA.

In 1978, the Congress amended the statutory provisions governing Section 8 programs in the course of enacting the Housing and Community Development Amendment of 1978.[21] The Senate Committee Report with regard to that 1978 legislation discussed evictions under the Section 8 Existing Housing Program:

*Section 8 evictions*

In considering this bill, the committee rejected a proposal by the administration which would have permitted landlords of section 8 existing housing projects to evict tenants without review by the local public housing authorities (PHA) which administer the programs.

The present law, which requires PHA approval, provides substantial protection for the tenant such as the opportunity to object if the eviction violates the lease or is without good cause. At the same time, the committee believes that the present law does not unduly burden the PHA or landlord, in that it does not require a formal hearing, and eviction is automatically authorized if the PHA does not act to prevent it within 20 days.

The committee believes that the administration has not made a persuasive case as to the need for its proposed modification of the current procedure. In addition, adoption of the proposal would leave section 8 tenants to rely on State and municipal laws for protection, and the committee does not feel that HUD has provided ample information on the extent to which this protection would be sufficient. In the absence of such additional information, the committee omitted the proposed change in eviction procedures from the bill.[22]

The position advocated by the Senate Committee report prevailed.[23] Thus, the rejection by the Congress of the Administration's proposal indicates an unwillingness on the part of the Congress to allow landlords in the Existing Housing program to do what the AAP regulations challenged herein permit landlords to do, namely, to issue eviction notices by themselves. Accordingly, those regulations are seemingly inconsistent with Congressional intent.

**20.** H.Rep.No.93–1144, at 19, 93d Cong.2d Sess. (1974) [1974 House Report].

**21.** Pub.L.No.95–557, 92 Stat. 2080.

**22.** S.Rep.No.95–871, at 15, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Admin.News 4773, 4778 [1978 Senate Report].

**23.** The House had agreed to the Administration's proposal, and had added such a proposed modification to its bill, but the provision was dropped by the Conference Committee. *See* H.Rep.No.95–1792, at 72, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Admin. News 4872, 4892 [1978 House Conference Report].

HUD contends that it has the authority to combine the statutory authorization for the Existing Housing Program with the statutory procedures for the New Housing and Substantial Rehabilitation Programs, and thereby to create a hybrid program, AAP, which is not explicitly authorized by statute. HUD argues that the landlords in the AAP program are, like the landlords in the New Housing and Substantial Rehabilitation Programs, more sophisticated than the landlords in the ordinary Existing Housing Program, and that consequently the former type of landlord should be treated like the landlords in the New Housing and Substantial Rehabilitation Programs. HUD seemingly contends that the reason Congress allows landlords in the New Housing or Substantial Rehabilitation Programs to evict tenants without governmental involvement is because of the greater sophistication of those landlords.

The parties, in their presentations to this Court regarding HUD's pending motions to dismiss, agree that there is a factual dispute concerning the relative sophistication of the landlords involved in the various programs.[24] HUD has stated that it does not desire the opportunity to present any evidence, either in a summary judgment context or otherwise, in support of those policy arguments, and will stand or fall upon the record as it now exists.

■■■■■ This Court is mindful of the deference owed to an agency's interpretation of its own enabling statutes.[25] However, courts are not obligated to follow administrative interpretations if the latter are inconsistent with the intent of Congress. For that reason, this Court will not follow the administrative interpretation which HUD urges, and concludes that HUD is required, by the federal statutory scheme, to involve itself appropriately in the eviction process relating to members of the plaintiff class.

## II.

The statutes give little or no clue to the types of procedures HUD must follow in connection with evictions of the kind under consideration herein. Therefore the question for determination herein concerns the types of eviction procedures which HUD is constitutionally required to follow. Plaintiffs contend that the due process clause of the Fifth Amendment requires a pretermination hearing before HUD can issue a notice of eviction. HUD agrees that if HUD is, contrary to its position as discussed in Part I *supra*, statutorily required to be involved in the eviction process, due process requires HUD to follow *some* appropriate procedures before plaintiff can be evicted. However, HUD argues that in any event a combination of the procedures set forth in footnote 5 *supra* and of the judicial procedures provided by the State of Maryland satisfy due process requirements.

In *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970), the plaintiff was a tenant in a federally assisted public housing project owned and operated by the Housing Authority of the City of Durham, North Carolina, which was an agency of the State of North Carolina. The plaintiff attended a meeting with the project manager, at which time she was informed that certain unnamed neighbors had complained of the conduct and morals of her children.

24. Plaintiffs and defendant landlords contend that there is no correlation between sophistication of the landlords and the programs in which they are involved and also claim that many landlords are involved with more than one type of program.

25. *See, e. g., Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) ("venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . .");

*Jno. McCall Coal Co. v. United States*, 374 F.2d 689, 691–92 (4th Cir. 1967) ("We are without authority to overturn an administrative interpretation of an act or regulations adopted thereunder unless it can be said that the construction of the act is 'plainly erroneous or inconsistent with the regulation.' [citation omitted.] Even though our views with regard to interpretation differ from those of the administrative agency we would not be authorized to substitute our views if it could be said that the administrative interpretation was a reasonable one. [citation omitted.]")

Within two weeks thereafter, the Authority wrote a letter to plaintiff, stating that the latter's lease would be terminated at the end of that month. The letter stated that the tenant had already been informed of the causes for her eviction. Plaintiff secured counsel and requested a list of the specific charges. She and her attorney met with the executive director of the Authority eighteen days after the issuance of the said letter, at which time plaintiff was informed that the aforementioned meeting constituted an administrative hearing. Judge Winter wrote (at 1000):

> Nine days later a hearing was conducted before the commissioners of the Housing Authority. The commissioners denied the requests of plaintiff's attorney for the specifics of the charges, the names of the complainants, and the rules governing the manner in which the hearing would be conducted. The evidence of the complaining witnesses was heard in camera with no opportunity for plaintiff to challenge or cross-examine them. Her attorney, however, was permitted to introduce affidavits from neighbors who considered plaintiff a satisfactory tenant. Plaintiff was not told the names of the persons making complaints nor the date of the specific acts of misconduct or immoral behavior on the part of her children.

Judge Winter held (at 1003) that a person having the " 'privilege' or the 'right' to occupy publicly subsidized low-rent housing" is entitled to due process protection, and, in so holding, observed (at 1004):

> Succinctly stated, *Goldberg* [26] requires (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interest, (4) a decision, based on evidence adduced at the hear-

ing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker. We refer to *Goldberg* and *Escalera* [27] for further elaboration of these requirements.

(Footnote omitted)

In *Johnson v. Tamsberg*, 430 F.2d 1125 (4th Cir. 1970), decided less than four months before *Caulder*, the plaintiff, a recipient of public housing benefits, challenged the administrative proceedings held by the Housing Authority with respect to plaintiff's eviction. Judge Sobeloff, who concurred with Judge Winter in *Caulder*, distinguished (at 1127) *Escalera*, and indicated that if the state courts provide constitutionally adequate procedures, due process does not require an additional pretermination hearing:

> The sharp distinction between the two cases is that under the New York eviction procedure, administrative decisions to evict, reached in *Escalera* without observing due process safeguards, were enforceable without any judicial review of the factual basis of the administrative action. In the South Carolina scheme, on the other hand, in order to obtain an eviction order the Housing Authority must prove its allegations. There is a full trial in which the tenant may demand a jury. Thus in Charleston, unlike New York in *Escalera*, public housing tenants are not actually ejected until basic due process requisites are satisfied. That is precisely what happened in this case.

> We have then no *Escalera* situation, where, because of the New York scheme, it was necessary to order relief in the administrative process to insure due process to the tenants. This case fits more properly under the *Thorpe [v. Housing Authority of City of Durham]* dictum:

>> Moreover, even if the Authority does not provide such a hearing, we have no reason to believe that once petitioner is told the reasons for her eviction she cannot effectively challenge their legal

**26.** *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**27.** *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970).

sufficiency in whatever eviction proceedings may be brought in North Carolina courts.

393 U.S. [268] at 284, 89 S.Ct. [518] at 527 [21 L.Ed.2d 474]. Any substantial due process grievance that plaintiff might have had when she filed her complaint was mooted by the plenary hearing that she was afforded. There is no contention that the court hearing was inadequate in scope, or that the notice provided was insufficient to enable plaintiff's counsel to prepare for it.

Thus, the only question before us is whether a South Carolina policy of providing a hearing in court rather than before an administrative tribunal is constitutionally faulty. We have been offered no suggestion that the plaintiff was in any way disadvantaged or that the result in this case would have been different had the Housing Authority itself held the hearing. Hence the question is, at least on this record, purely academic.[28]
(Footnotes omitted)

In *Joy v. Daniels*, 479 F.2d 1236 at 1242–43 (4th Cir. 1973), Judge Craven held that recipients of federal housing assistance under the program which was the predecessor to Section 8 need not be accorded a pretermination proceeding "so long as the tenant may at some stage receive a plenary judicial hearing."[29] Judge Craven also noted (at 1243):

> * * * Landlord-tenant law is traditionally the province of the states. State judges are bound as are we by the due process clause of the fourteenth amendment. [citations omitted.][30]

Accordingly, the question arises as to whether the applicable Maryland court procedures satisfy due process requirements.[31]

**28.** In *Brown v. Housing Authority of the City of Milwaukee*, 340 F.Supp. 114, 115–16 (E.D.Wisc. 1972), Judge Gordon rejected the argument that a hearing in the state courts obviates a pretermination hearing, stating:

> * * * [O]nly the "boldest tenant" would be prepared to obtain counsel and resist the eviction in court proceedings. As a practical matter, many tenants in low-cost public housing facilities would be obliged to look for relocation housing shortly after being served with a 30-day notice, since they could not afford to engage in a courtroom confrontation or to await the outcome of such trial.

However, the Fourth Circuit has seemingly not adopted Judge Gordon's approach.

**29.** Both *Johnson* and *Joy* involved South Carolina court procedures. In *Joy* (at 1242–43), Judge Craven cited to and relied upon *Johnson*.

**30.** See also *Jeffries v. Georgia Residential Fin. Auth.*, 503 F.Supp. 610, 621–23 (N.D.Ga.1980); *Anderson v. Denny*, 365 F.Supp. 1254, 1260–62 (W.D.Va.1973) (Turk, J.) citing to and applying *Joy* and *Johnson*.

**31.** That would appear to be the point at issue, even though, as noted *supra* at 1175–1176, the 1978 Senate Report indicated some concern with the adequacy of state procedures.

Md.Code, Real Property Article, § 8–402.1 provides:

§ 8–402.1. Breach of lease.

(a) *Complaint to District Court; summons to appear; continuance.*—When a lease provides that the landlord may repossess the premises if the tenant breaches the lease, and the landlord has given the tenant one month written notice that the tenant is in violation of the lease and the landlord desires to repossess the premises, and if the tenant or person in actual possession refuses to comply, the landlord may make complaint in writing to the District Court of the county where the premises is located. The Court shall summons immediately the tenant or person in possession to appear before the court on a day stated in the summons to show cause, if any, why restitution of the possession of the leased premises should not be made to the landlord. If either of the parties fails to appear before the court on the day stated in the summons, the court may continue the case for not less than six nor more than 10 days and notify the parties of the continuance.

(b) Judgment of District Court; appeal.—If the court determines that the tenant breached the terms of the lease and that the breach was substantial and warrants an eviction, the court shall give judgment for the restitution of the possession of the premises and issue its warrant to the sheriff or a constable commanding him to deliver possession to the landlord in as full and ample manner as the landlord was possessed of the same at the time when the lease was entered into. The court shall give judgment for costs against the tenant or person in possession. Either party may appeal to the circuit court for the county, or the Baltimore City Court within ten days from entry of the judgment. If the tenant (1) files with the District Court an affidavit that the appeal is not taken for delay; (2) files sufficient bond with one or more securities conditional upon diligent

In *Green v. Copperstone Ltd.*, 28 Md.App. 498, 346 A.2d 686 (1975), the landlord sought to evict the tenant at the conclusion of the tenant's lease. The landlord had received federal aid in constructing the residence, and the tenant's rent had been proportionately reduced. The sole ground asserted for the termination was the expiration of the lease. Judge Menchine, after discussing, *inter alia, Caulder*, and *Joy*, indicated (at 516, 346 A.2d 686) his agreement with the approach in those cases, and concluded that "the benefits of the landlord and the tenant are the products of government action." Accordingly, Judge Menchine, on behalf of the Court of Special Appeals of Maryland, held that the tenant could not be evicted absent a cause other than the mere expiration of the lease. Judge Menchine wrote further (at 517, 346 A.2d 686):

> Our holding is limited solely to these propositions: (a) that landlord is bound to assure due process to the tenant; (b) that due process requires a hearing and proof of good cause for eviction after notice of the grounds upon which eviction is sought

and (c) that mere expiration of the term of a lease is not such a good cause.

We find no constitutional impediment to utilizing summary Maryland statutory eviction procedures provided proper notice is given and good cause for eviction is shown at hearing. *Joy v. Daniels, supra; Appel v. Beyer, supra.*[32]

■ Maryland's statutory provisions themselves, and the above discussed federal and Maryland decisions, justify and indeed seemingly compel the statements, made during oral argument in these cases in April 1981, by counsel for plaintiffs, that the Maryland court procedures meet the requirements of due process of law. That means that plaintiffs herein are not constitutionally entitled to have HUD do more than HUD has undertaken it will do if HUD, contrary to the position asserted by it and rejected by this Court in Part I of this opinion, does involve itself in the eviction process to the extent set forth in footnote 5 *supra*. Accordingly, HUD will be required so to act by an Order which this Court will today enter. All other relief sought herein by plaintiffs will be denied by that Order.[33]

prosecution of the appeal; (3) pays all rent in arrears, all court costs in the case; and (4) pays all losses or damages which the landlord may suffer by reason of the tenant's holding over, the tenant or person in possession of the premises may retain possession until the determination of the appeal. Upon application of either party, the court shall set a day for the hearing of the appeal not less than five nor more than 15 days after the application, and notice of the order for a hearing shall be served on the other party or his counsel at least five days before the hearing. If the judgment of the District Court is in favor of the landlord, a warrant shall be issued by the court which hears the appeal to the sheriff, who shall execute the warrant. (1978, ch. 478.)
See also Md.Code, Real Property Article, § 8–402.

**32.** *Appel v. Beyer*, 39 Cal.App.3d Supp. 7, Super., Supp. 15, 114 Cal.Rptr. 336, 341 (1974). Judge Menchine also stated (28 Md.App. at 517, 346 A.2d 686): "The tenant is entitled to be explicitly informed of the grounds upon which her eviction is sought." Judge Menchine further noted (28 Md.App. at 502, 346 A.2d 686): "Appellant [the tenant] concedes that the provisions for a hearing set forth in the Real Property Article § 8–402 comply with proce-

dural due process requirements, if notice and proof at the hearing demonstrate good cause for eviction." *See also* Note, 36 Md.L.Rev. 255, 266 (1976).

**33.** After this opinion was fully prepared this Court received the attached letter dated September 24, 1981 from Gershon M. Ratner, Esquire, Associate General Counsel for Litigation of HUD. Accordingly, this Court withheld the final preparation and filing of this Opinion until it could afford to all counsel of record the opportunity to be heard during a proceeding held on the record earlier today. Counsel for plaintiff stated and agreed that insofar as leases entered into on or after October 1, 1981 are concerned, HUD is not required by federal statute to involve itself in any eviction proceeding pertaining to tenants who fall within the plaintiff class in these cases. However, counsel for plaintiffs continue to assert that HUD is required, pursuant to the federal constitution, to involve itself with regard to evictions under leases entered into on or after October 1, 1981 to the same extent as HUD may be so required in connection with pre-October 1, 1981 leases. Thus, counsel for plaintiffs continue to assert the constitutional contentions which are discussed under heading II in this opinion.

The named plaintiffs in this case and the members of the class they represent are all

tenants under leases entered into prior to October 1, 1981. This Court hereby revises its earlier class certification to make it clear that the plaintiff class consists of all persons in the State of Maryland who, pursuant to one or more leases entered into prior to October 1, 1981 reside in any existing subsidized or unsubsidized multi-family residential project which is subject to a mortgage insured pursuant to any section of the National Housing Act, any project the mortgage for which has been assigned to HUD, any such project acquired by HUD and thereafter sold under a HUD-held purchase money mortgage, or a project for the elderly financed under Section 202 of the Housing Act of 1959, and on whose behalf Housing Assistance Payments are made under Section 8 Project Commitments pursuant to provisions of Section 8.

As to tenants under leases entered into on or after October 1, 1981, this Court expresses no view with regard to HUD's obligations under statutory law or pursuant to constitutional principles. This Court does not reach those issues since those issues are not before it. That is true because the named plaintiffs and the class they represent involve persons who are tenants under pre-October 1, 1981 leases and not leases entered on or after October 1, 1981.

Nor does this Court need herein to reach the question of what, under the new legislation, constitutes a lease entered into on or after October 1, 1981. In that connection, this Court notes that during the proceeding held earlier today counsel for plaintiffs and counsel for the Secretary have stated that there is a question as to whether a tenant who continues in occupancy of leased premises after the later to occur of (a) October 1, 1981 or (b) the termination of his rental term is or is not a tenant under a lease entered into on or after October 1, 1981. That raises statutory construction and perhaps also constitutional questions which are not before this Court and in connection with which this Court expresses no opinion.