REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 2037

September Term, 2012

_____


GRADY MANAGEMENT, INC.

v.

JESSE EPPS

_____


Woodward,
Nazarian,
Kenney, James A., III
 (Retired, Specially Assigned),

JJ.

_____


Opinion by Kenney, J.

_____


Filed:  August 28, 2014

Appellant, Grady Management, Inc. ("Grady Management"), appeals an order of the Circuit Court for Montgomery County granting summary judgment in favor of appellee, Jesse Epps ("Mr. Epps"). It presents one question[1] for our review which we rephrase as follows:

Did the circuit court err in granting appellee's motion for summary judgment?

For the reasons that follow, we shall affirm the judgment of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Epps is a tenant residing in the Snowdens Ridge Apartments at 2103 Harlequin Terrace in Silver Spring, Maryland, an apartment project that receives federal funds under the Section 8 New Construction Program[2] to subsidize the rent for its tenants. Mr. Epps and Grady Management entered into a model lease for such subsidized programs, which provides that "[a]fter the initial term ends, the Agreement will continue for successive terms of one Year each unless automatically terminated as permitted by paragraph 23 of this Agreement." The termination clause (Paragraph 23) states, in pertinent part:

---

[1]Whether 24 C.F.R. § 880.607 precludes Landlord from using the Maryland Tenant holding over statute to remove Tenant after the expiration of the lease term.

[2]The New Construction Program was established by Congress through enactment of Section 8 of the Housing and Community Development Act of 1974. *See* 42 U.S.C. § 1437f. Regulations pertaining to this program are promulgated by the Department of Housing and Urban Development (HUD), found at 24 C.F.R. Part 880 *et seq*. *See Greenwich Gardens Assoc. v. Pitt*, 484 N.Y.S.2d 439, 440 (1984). The New Construction Program provides subsidies to project owners who develop newly constructed rental housing for low income tenants. *See* U.S. Dep't of Hous. & Urban Dev., *Section 8 Program Background Information*, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/mfh/rfp/s8bkinfo (last visited July 10, 2014).

## 23. Termination of Tenancy

\*\*\*

b. Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement.

c. The Landlord may terminate this Agreement for the following reasons:

> 1. the Tenant's material noncompliance with the terms of this Agreement;[3]

---

[3]Other causes for termination include:

2. the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act;

3. drug related criminal activity engaged in or on or near the premises, by any tenant, household member, or guest, and such activity engaged in on the premises by any other person under the tenant's control;

4. determination made by the Landlord that a household member is illegally using a drug;

5. determination made by the Landlord that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents;

6. criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control;

\*\*\*

7. if the tenant is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that in the case of the State of New Jersey, is a high misdemeanor;

(continued...)

d. the Landlord may terminate this Agreement for other good cause, which includes, but is not limited to, the tenant's refusal to accept change to this agreement. Terminations for "other good cause" may only be effective as of the end of any initial[4] or successive term.[5]

The term material noncompliance with the lease includes:

(1) one or more substantial violations of the lease. . . .[6]

---

(...continued)

8. if the tenant is violating a condition of probation or parole under Federal or State law;

9. determination made by the Landlord that household member's abuse or pattern of abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the premises by other residents;

10. if the Landlord determines that the tenant, any member of the tenant's household, a guest or another person under the tenant's control has engaged in the criminal activity, regardless of whether the tenant, any member of the tenant's household, a guest or another person under the tenant's control has been arrested or convicted for such activity.

[4]The initial term of Mr. Epps's lease was from May 1, 2010 to April 30, 2011.

[5]Each successive term was for a period of one year.

[6]In the lease, material noncompliance also includes:

(2) repeated minor violations of the lease that: (a) disrupt the livability of the project, (b) adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities, (c) interfere with the management of the project, or (d) have an adverse financial effect on the project;

(3) failure of the tenant to timely supply all required information on the income and composition, or eligibility factor, or the tenant household (including, but

(continued...)

On November 3, 2010, Grady Management brought an action, under the breach of lease statute, Md. Code (1974, 2010 Repl. Vol.), § 8-402.1 of the Real Property Article ("R.P."),[7] in the District Court. The case was transferred to the circuit court after Mr. Epps requested a jury trial. The action alleged that Mr. Epps, a member of "his household[,] or guest [made] excessive noises" and "threatened another resident." On July 29, 2011, a jury found that Mr. Epps had breached the lease, and that the breach was substantial, but that it did not warrant eviction.

On January 31, 2012, Grady Management sent Mr. Epps a Notice to Vacate by April 1, 2012 based on "other good cause and/ or material noncompliance with the covenants and conditions of [Mr. Epps's] lease agreement[.]" More specifically, that Mr. Epps or a guest

(...continued)

> not limited to, failure to meet the disclosure and verification requirements for Social Security Numbers, or failure to sign and submit consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies), and

> (4) non-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law. The payment of rent or any other financial obligation due under the lease after the due date but within the grace period permitted under State law constitutes a minor violation.

[7]R.P. § 8-402.1 (b)(1) states:

> If the court determines that the tenant breached the terms of the lease and that the breach was substantial and warrants an eviction, the court shall give judgment for the restitution of the possession of the premises and issue its warrant to the sheriff or a constable commanding the tenant to deliver possession to the landlord in as full and ample manner as the landlord was possessed of the same at the time when the lease was entered into. The court shall give judgment for costs against the tenant or person in possession.

of his household

made excessive noise and disturbed [his] neighbors. [Mr. Epps,] an occupant[,] or guest threatened another resident. These incidents occurred in September 2010 in or about or close to [Mr. Epps's] premises of 2103 Harlequin Terrace, Silver Spring, MD. There were also prior incidents of noise making which occurred in June, August, September and November 2006 as well as April and May 2007[8] in or about or close to [Mr. Epps's] premises of 2103 Harlequin Terrace Silver Spring, MD. All of the herein described incidents were described in answers to discovery in [the breach of lease case]. A Montgomery County Circuit Court jury on or about July 29, 2011 found that this conduct constituted a substantial breach of the lease in [that case.]

When Mr. Epps refused to vacate, Grady Management filed a Tenant Holding Over[9] Complaint in the District Court on April 10, 2012. In his answer, he argued that the complaint was barred by *res judicata* and collateral estoppel because of the breach of lease case. Mr. Epps again demanded a jury trial, and the case was transferred to the circuit court.

---

[8] We note that the earlier events occurred outside of the three-year statute of limitations for a breach of the lease. *See* Md. Code (1973, 2013 Repl. Vol.), § 5-101 of the Courts and Judicial Proceeding Article ("C.J.P.") ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); *see also Tipton v. Partner's Management Co.*, 364 Md. 419, 422 (2001) ("a residential lease agreement . . . is subject to the three year limitation period enunciated in [C.J.P. § 5-101]").

[9] The tenant holding over statute, R.P. § 8-402 (b)(1)(i) states:

Where any tenancy is for any definite term or at will, and the landlord shall desire to repossess the property after the expiration of the term for which it was leased and shall give notice in writing one month before the expiration of the term or determination of the will to the tenant or to the person actually in possession of the property to remove from the property at the end of the term, and if the tenant or person in actual possession shall refuse to comply, the landlord may make complaint in writing to the District Court of the county where the property is located.

5

Both parties filed motions for summary judgment on September 10, 2012.

In its motion for summary judgment, Grady Management argued that the burden of proof for removing a holdover tenant is much less than that in a breach of lease case. Arguing that the jury in the breach of lease case found that the excessive noise and threat qualified as a substantial breach of Mr. Epps's lease, there was good cause to terminate the lease at the end of the term, even if those acts did not warrant an eviction during the term of the lease. Relying on *Carter v. Maryland Management Co.*, 377 Md. 596 (2003), Grady Management argued that a tenant holding over action can be brought against a federally subsidized tenant when the tenancy has been terminated for good cause. Grady Management stated, "[t]he [*Carter*] Court held that the tenant does not have an indefinite tenancy or a never-ending lease and that when the original term expires the tenancy may be terminated for good cause and the tenant evicted pursuant to the tenant holding over statute."

In his motion for summary judgment, Mr. Epps asserted that, because it could only be terminated for good cause, his "lease does not terminate upon the passing of an expiration date like a lease with a definite term, or at the discretion of the landlord as in a lease with an 'at will' term," and, therefore, the tenant holding over statute does not apply. In his supporting memorandum, citing *Cottman v. Princess Anne Villas*, 340 Md. 295, 298 (1995), he argued that the "'good cause' requirement gives [him] 'a continuing right of possession to the unit for an *indefinite time period*.'" (Emphasis in memorandum). He explained that a tenancy under the New Construction Program is different from the tenancy in *Carter*, which

was based instead on the Federal Low-Income Housing Tax Credit Program ("LIHTC") and the Section 8 Tenant-Based Assistance Rental Voucher Program ("Voucher Program"). The *Carter* Court, he contends, allowed the landlord to proceed with the tenant holding over action because the lease in that case expired under its own terms, did not have a good cause requirement for termination, and the landlord had provided the requisite notice. Here, however, there was not "good cause" for the landlord not to renew the lease. Because the reasons stated for termination were the same reasons given in the breach of lease case, the doctrine of *res judicata* precluded termination.[10]

In its opposition to Mr. Epps's motion for summary judgment, Grady Management responded that Mr. Epps was "on a year long lease which renewed every year[,]" and thus, he was "a tenant for a definite term[.]" Any continuing right of possession "[did] not mean that his tenancy is indefinite."

Grady Management agreed that *res judicata* applied, but that the doctrine required a ruling in its favor because the jury had found a substantial breach of the lease and that finding provided the good cause required not to renew Mr. Epps's lease. Grady Management further explained that it could not have brought a tenant holding over action when it filed the breach of lease case because Mr. Epps was "still in his yearly term" and therefore was not

---

[10]Mr. Epps also filed a motion in opposition to Grady Management's motion for summary judgment reiterating his previous arguments and adding that, even if Grady Management could bring a tenant holding over action, the issue of whether there was good cause to terminate the lease was a question of disputed fact and therefore summary judgment was not appropriate.

holding over. But, when Mr. Epps's lease was terminated for good cause at the end of his yearly term, he became a hold over tenant, and subject to a tenant holding over action.

The circuit court held a hearing on October 18, 2012, and granted Mr. Epps's motion for summary judgment, reasoning that:

> the jury's prior verdict, that although it's finding a material breach, finding that that breach did not justify eviction is tantamount to - - you can phrase it different ways, but to preventing that jury verdict from constituting a good-cause basis not to renew, because I think there is - - clearly, everybody agrees on automatic right to renew unless there's good cause not to, and in essence, the jury verdict was "there's not good cause to remove this person from the property," and refusing to terminate is the equivalent in the context, the federal renewing lease situation is equivalent to eviction, and I will say that, as well, I do believe that the tenant holding over statute does not apply when in the renewing lease situation, that the basis for the alleged good cause here today has been litigated through a breach-of-lease action that was heard by the jury. And now, in essence, the landlord is unilaterally saying "well, we find good cause because the jury did," or "if our belief is bolstered by the jury verdict," and therefore, we are going to say "no, we're not terminating," and even though the automatic right to terminate is there. . . .

> \*\*\*

> . . . I do think that refusing to continue the lease or to renew the lease is equivalent to terminating the lease, and the jury did not find that termination of the lease was appropriate.

Grady Management filed a timely appeal to this Court.[11]

## DISCUSSION

*The Arguments Presented*

---

[11]On January 28, 2013, this Court entered a dismissal order for Grady Management's failure to file a Civil Appeal Information Report as required by Md. Rule 8-205. That order was vacated on February 26, 2013, after the Information Report was filed.

On appeal, Grady Management argues that the termination clause of Mr. Epps's lease

conforms with 24 C.F.R. § 880.607 in regard to the grounds for termination, and that it was

not precluded by 24 C.F.R. § 880.607[12] from using the Maryland tenant holding over statute

[12]24 C.F.R. § 607(b) provides in relevant part:

Entitlement of Families to occupancy–

(1) Grounds. The owner may not terminate any tenancy except upon the
following grounds:
(i) Material noncompliance with the lease;
(ii) Material failure to carry out obligations under any State landlord
and tenant act;
(iii) Criminal activity by a covered person in accordance with sections
5.858 and 5.859, or alcohol abuse by a covered person in accordance
with section 5.860. If necessary, criminal records can be obtained for
lease enforcement purposes under section 5.903(d)(3).
(iv) Other good cause, which may include the refusal of a family to
accept an approved modified lease form (see paragraph (d) of this
section). No termination by an owner will be valid to the extent it is
based upon a lease or a provisions of State law permitting termination
of a tenancy solely because of expiration of an initial or subsequent
renewal term. All terminations must also be in accordance with the
provisions of any State and local landlord tenant law and paragraph (c)
of this section.

***

(3) Material noncompliance.
(i) Material noncompliance with the lease includes:
    (A) One or more substantial violations of the lease; or
    (B) Repeated minor violations of the lease that disrupt the
    livability of the building; adversely affect the health or safety of
    any person or the right of any tenant to the quiet enjoyment of
    the leased premises and related facilities; interfere with the
    management of the building or have an adverse financial effect
                                                          (continued...)

to remove Mr. Epps. Grady Management also argues that the holding in *Carter*, that the tenant holding over statute can be applied to a federally subsidized voucher program, should be "expanded to provide that landlords are not precluded from using the Maryland tenant holding over statute to remove any federally-subsidized tenant."

According to Grady Management, under " 24 C.F.R. § 880.607, 'when a termination

---

(...continued)

on the building.

(c) Termination notice.
(1) The owner must give the family a written notice of any proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specified date and advising the family that it has an opportunity to respond to the owner.
(2) When a termination notice is issued for other good cause (paragraph (b)(1)(iv) of this section), the notice will be effective, and it will so state, at the end of a term and in accordance with the termination provisions of the lease, but in no case earlier than 30 days after receipt by the family of the notice. Where the termination notice is based on material noncompliance with the lease or material failure to carry out obligations under a State landlord and tenant act pursuant to paragraph (b)(1)(I) or (b)(1)(ii) of this section, the time of service must be in accord with the lease and State law.
(3) In any judicial action instituted to evict the family, the owner may not rely on any grounds which are different from the reasons set forth in the notice.

\*\*\*

(5) In actions or potential actions to terminate tenancy, the Owner shall follow 24 C.F.R. part 5, subpart L, in all cases where domestic violence, dating violence, stalking, or criminal activity directly related to domestic violence, dating violence, or stalking is involved or claimed to be involved.

10

notice is issued for other good cause . . . the notice will be effective, and it will so state, at the end of a term and in accordance with the termination provisions of the lease.'" The initial term of Mr. Epps's lease began on May 1, 2010 and ended on April 30, 2011, and the lease provides that "[a]fter the initial term ends, the [Lease] will continue for successive terms of one Year each unless [ ] terminated as permitted by paragraph 23 of th[e Lease]."

Grady Management argues that the breach of lease statute, R.P. § 8-402.1, applies when "'an unexpired lease for a stated term provides that the landlord may repossess the premises prior to the expiration of the stated term if the tenant breaches the lease.'" On the other hand, the tenant holding over statute, R.P. § 8-402, "is available when 'a tenant under any periodic tenancy, or at the expiration of a lease . . . shall unlawfully hold over beyond the expiration of the lease or termination of the tenancy.'" Therefore, both the tenant holding over and breach of lease statutes can apply to New Construction Program tenants, depending on whether the action is brought during or at the end of the term, because the tenant holding over "statute applies to a tenancy for 'any *definite* term or at will' and the breach of lease statute applies to 'an unexpired lease for a *stated* term.'" (Emphasis added). Grady Management contends that a "definite term" and a "stated term" are "effectively synonymous[,]" but "[e]ven if the semantic distinction between 'stated' and 'definite' is meaningful, Mr. Epps's position that his lease "does not expire and is indefinite" would "make it impossible for a Maryland New Construction Landlord to enforce its statutory and contractual right to terminate a tenancy for "other good cause." If that were the case,

11

landlords would be required to "perpetually tolerate a habitual lease violator unless the Landlord could prove that the tenant committed a substantial breach which warranted the tenant's eviction."

In response, and denying the applicability of *Carter*, Mr. Epps distinguishes between tenant-based voucher programs, where the financial subsidy follows the tenant and are meant to operate as much like the unassisted market as possible,[13] and project-based subsidy programs. He contends that "[t]he Court's rationale [in *Carter*] turns entirely on the fact that the Voucher Program lease at issue in that case did not contain a 'good cause' requirement that prevented the lease from expiration," and the one-year tenancy had expired. He states that "[a]lthough the LIHTC Program requirements imposed a restriction on the landlord from terminating the tenancy except for 'good cause,' that 'good cause' requirement was not part of the lease agreement and therefore did not affect the Court's finding that the lease had expired." Therefore, the Court allowed "the landlord to proceed with a Tenant Holding Over action on the basis that the lease had expired (per the Voucher program) but requir[ed] the landlord to prove 'good cause' at the Tenant Holding Over hearing (per the LIHTC program)." His lease, however, does not expire and the "good cause" requirement is part of

---

[13]The voucher program increases affordable housing choices by allowing families to lease privately-owned housing rather than subsidized housing projects. The family may end the contract with the owner and move to another unit with continued assistance. *See* U.S. Dep't of Hous. & Urban Dev., *Housing Choice Vouchers Fact Sheet*, http://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_voucher_program_sect ion_8 (last visited July 7, 2014).

the lease, and, therefore, "the rationale in *Carter* is inapplicable and does not justify [Grady Management's] circumvention of Maryland's statutory scheme in bringing a Tenant Hold Over action."

He argues further that, because the New Construction Program provides subsidies to project owners, the subsidy remains with the owner and not the tenant. For that reason, project-based programs provide the tenant with an "endless lease" that can be terminated only for good cause and "does not expire on the passing of an expiration date like a typical private residential lease[.]" Therefore, the tenant holding over statute is inapplicable because it only applies after the expiration of a tenancy for "any definite term or at will." He points out that his lease "explicitly states that it will 'continue for successive terms of one Year unless terminated in accordance with the termination provision [of the lease.]" Citing *Cottman*, 340 Md. at 298, he contends that the "good cause" requirement for termination of his lease gives him a continuing right of possession for an indefinite period, and that, the end of any initial or successive term is not "a fixed date that automatically ends the tenancy." It merely determines "when [a landlord] may rely on 'other good cause' as a basis for terminating the tenancy."

Mr. Epps further contends that actions under the tenant holding over statute "were never meant to adjudicate the fact intensive issue of whether a tenant breached the lease and whether that breach gives the landlord the right to terminate the tenancy." In support of this argument, he cites Maryland Rule 3-711, pointing out that in a tenant holding over action

13

"pretrial discovery is not available, and only basic facts, such as the giving of proper notice and the passing of the lease's expiration date, need to be established" and that breach of lease actions are not subject to this rule.

Mr. Epps renews on appeal his argument that this action is barred by *res judicata* and collateral estoppel. He explains that *res judicata* applies because the parties are the same, the claim in the current action is identical to the previous adjudication, and there was a final judgment on the merits. Applying the transaction test,[14] he asserts that the claims involve the same transaction because the facts in both cases "are predicated on the same lease dated September 14, 2010, and arise from the exact same breach of that lease." He argues that in both cases, Grady Management claimed the right to terminate Mr. Epps's lease because of a particular breach or set of alleged facts, and that, citing *Whitaker v. Whitaker*, 60 Md. App. 695, 702 (1984), "cannot escape the bar of *res judicata* by bringing a new claim when that claim differs merely in form but not substance."

In regard to collateral estoppel, he argues that "[a]lthough the element 'warrants an eviction' is not technically a part of the Tenant Holding Over statutory language, that element is necessarily "implicit in the definition of 'good cause' in this Tenant Holding Over

---

[14]The "transaction" test includes "such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *deLeon v. Slear*, 328 Md. 569, 589-90 (1992); *Kent Cnty. Bd. of Educ. v. Bilbrough*, 309 Md. 487, 499 (1987) (adopting Restatement (Second) of Judgments § 24).

action[,]" and that "the federal 'good cause' standard[15] for breach and Maryland's Breach of Lease (R.P. § 8-402.1) standard are functionally identical in enabling the fact finder to weigh all of the relevant factors in determining whether a breach warrants an eviction." According to Mr. Epps, the jury's finding that the breach did not warrant an eviction precludes his landlord "from establishing 'good cause' to terminate his lease in the Tenant Holding Over action."

He also argues that, even if his lease was not indefinite, Grady Management did not properly issue a notice to vacate "and filed its Tenant Holding Over action prematurely." According to Mr. Epps, the tenant holding over statute only applies when a landlord has properly given notice and the tenant refuses to vacate at the end of the term. Here, Mr. Epps's "initial nominal term ended on April 30, 2011, [and] the lease continued for 'successive term[s] of one Year' to April 30, 2012 per the automatic renewal provision." The Notice to Vacate, given on January 31, 2012, stated that the date to vacate was April 1, 2012 and the tenant holding over action was filed on April 10, 2012, which was prior to the end of the

---

[15] 24 C.F.R. § 880.607(b)(iv) states:

(iv) Other good cause, which may include the refusal of a family to accept an approved modified lease form (see paragraph (d) of this section). No termination by an owner will be valid to the extent it is based upon a lease or a provisions of State law permitting termination of a tenancy solely because of expiration of an initial or subsequent renewal term. All terminations must also be in accordance with the provisions of any State and local landlord tenant law and paragraph (c) of this section.

15

renewal term. According to Mr. Epps, "[b]ecause there is no genuine dispute that [Grady Management] failed to provide a proper notice to vacate and filed its Tenant Holding Over action prematurely," there is no issue of material fact and summary judgment was appropriate for that reason. Not only was this argument not the basis for the court's grant of summary judgment, it was not raised or decided in the circuit court and we will not address it in this opinion. *See* Md. Rule 8-131 ("the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court").

*Analysis*

Summary judgment may be granted when "the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(e). Whether a grant of summary judgment was proper is a question of law that we review *de novo*. *Rockwood Cas. Ins. Co. v. Uninsured Emp'rs' Fund*, 385 Md. 99, 106 (2005). In determining whether a trial court's ruling as to summary judgment was legally correct, appellate courts "construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Jurgensen v. New Phoenix Atl. Condo.*, 380 Md. 106, 114 (2004). "We may not, ordinarily, affirm a summary judgment on a basis not relied upon by the circuit court[.]" *Carter v. Aramark Sports & Entm't Servs. Inc.*, 153 Md. App. 210, 246 n. 9 (2003) (citing *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 534 (2003)).

16

Because we believe the differences in the federal leasing programs and the leases involved in *Carter* and in this case are important, our analysis begins with a discussion of the Court of Appeals's decision in *Carter*. In that case, the landlord participated in the Federal Low Income Housing Tax Credit Program[16] and the tenant received housing assistance under the Voucher Program. *Carter*, 377 Md. at 598. At issue was whether the landlord could use the Maryland tenant holding over statute to evict the tenant. *Id.* Carter argued that under the Low Income Housing Tax Credit Program, a landlord could not terminate a tenancy without good cause, so she had a right to continued occupancy and her "fixed-term lease" was converted "into an indefinite one[.]" *Id.* at 608-609. The Court rejected her argument, reasoning:

> At one time, the law may have supported petitioner's view of an indefinite lease. Prior to the consolidation of the certificate and voucher programs in a new § 1437f(o) in 1998, the leasing provisions governing those programs were contained in § 1437f(d)(1)(B), which provided, in relevant part, that (1) the lease between owner and tenant had to be for at least one year "and shall contain other terms and conditions specified by the Secretary," and (2) the owner could not "terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." Section 1437f(d)(1)(B)(iii) through (v) listed certain conduct that would be cause for termination.

---

[16] As the *Carter* Court explains, the Low Income Housing Tax Credit "was enacted as part of the Tax Reform Act of 1986, as an effort to encourage the private development of low income housing." 377 Md. at 162-63. "Provided the property maintains compliance with the program requirements, investors receive a dollar-for-dollar credit against their Federal tax liability each year over a period of 10 years." U.S. Dep't of Hous. & Urban Dev., *How Do Housing Tax Credits Work?*, http://portal.hud.gov/hudportal/HUD?src=/program_offices/commplanning/affordablehousing/training/web/lihtc/basics/work (last visited July 10, 2014).

In 1995, the Secretary adopted new regulations for the certificate and voucher programs. *See* 60 FR 34660 (July 3, 1995) adopting new 24 C.F.R. § 982.309. Those regulations required the lease to be for an initial term of at least one year and to provide either "[f]or automatic renewal for successive definite terms (e.g., month-to-month or year-to-year); or . . . [f]or automatic indefinite extension of the lease term." § 982.309(b)(1) and (2). It provided that the term of the lease would terminate if the owner, the tenant, or the two together terminated the lease, but stated that, during the term of the lease, the owner could not terminate the lease except for good cause. §§ 982.309(b)(3), 982.310(a). In proposing those regulations, the Department noted that they were intended merely to "confirm and clarify" the existing principle that "the tenancy continues automatically after the end of the initial lease term" and that "[t]here is no need or requirement for the parties to execute a new lease or lease extension" as "[t]he automatic extension is provided for in the lease originally executed by the landlord and family." 58 FR 11292 (Feb. 24, 1993)

\*\*\*

We intimated as much, although the issue was not directly before us, in *Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 510 A.2d 540 (1986). The issue there was whether a § 8 tenant, who challenged a tenant-holding-over action, had sufficiently alleged a controversy involving more than $500 to entitle her to a jury trial. Noting the good cause requirement in the Federal regulations, we concluded that she "has a right to remain in her townhouse indefinitely until the Commission can establish good cause for eviction" and that that right of continued tenancy, coupled with the rent subsidy, caused the value of the controversy to exceed $500. *Id.* at 525.

\*\*\*

The statutory and regulatory regime changed significantly in 1998, however, when Congress consolidated the certificate and voucher programs in a new § 1437f(o). In place of the lease requirements of § 1437f(d), the new programs became subject to § 1437(o)(7) which, after requiring a one-year initial lease (unless the public housing agency approves a shorter term), provides that the lease shall (1) be "in a standard form used in the locality by the dwelling unit owner," (2) "contain terms and conditions that—(I) are consistent with State and local law; and (II) apply generally to tenants in the property who are not assisted under this section," and (3) "provide that during the term of the lease, the owner shall not terminate the tenancy except for

18

serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." (Emphasis added). *See* P.L. 105–276, 112 Stat. 2461, 2599. Those are the current provisions.

In conformance with that statutory change, the applicable regulations were also significantly rewritten. *See* 64 FR 26632 (May 14, 1999). They continue to require an initial lease of one year, unless the public housing agency approves a shorter term, but gone are the provisions requiring automatic renewal.

*Id.* at 609-12. Recognizing that a showing of good cause remained necessary not to renew such leases, the *Carter* Court explained that while the changes in the Voucher Program

were certainly intended to allow landlords more flexibility and to bring some aspects of the voucher program more in line with both private residential leasing practices and with State landlord-tenant law, we do not believe that they were intended to subject voucher tenants to the arbitrary whims of landlords who are reaping a significant tax advantage from the program. If we were to conclude that the good cause requirement applies only to mid-term evictions and not to renewal decisions, the program would lose substantial stability, as tenants could be evicted for no reason at the end of a one-year lease or at any time thereafter on 60 days notice. That would hardly be consistent with the declared Congressional purpose of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."

*Id.* at 613 (citing 42 U.S.C. § 1437f(a)). The Court concluded that although a participating landlord cannot evict a voucher program tenant without good cause, that neither the tax credit program nor the voucher program precluded the use of the tenant holding over statute to remove a tenant who is holding over after expiration of a lease term. *See id.* at 614. To succeed in such an action, the landlord "must comply with terms and conditions [of R.P. § 8-402] *and* establish good cause for refusing to renew the tenancy." *Id.* (emphasis in original).

19

Mr. Epps's lease states it "will continue for successive terms of one Year unless automatically terminated" in accordance with paragraph 23 of the lease. It, therefore, provides for automatic renewal and is more consistent with the voucher program leases prior to the amendment in 1998.

To terminate a New Construction Program lease, the landlord must "assure due process to the tenant" which "requires a hearing and proof of good cause for eviction after notice of the grounds upon which eviction is sought." *Green v. Cooperstone Ltd. P'ship*, 28 Md. App. 498, 517 (1975).[17] The question is whether the landlord's burden to establish good cause to terminate or not renew the lease at the end of a term is essentially the same as the landlord's burden to terminate during the term of the lease. Stated slightly differently, and in the context of this case: Can a claimed breach of the lease that did not warrant an eviction during the term of the lease constitute "other good cause" to terminate the lease at the end of a successive renewal term?

The lease before us provides for termination by the landlord for "material noncompliance," including "one or more substantial violations of the lease; repeated minor violations of the lease[;]" and for "other good cause," but termination of the lease for "other good cause" is only effective at the end of a renewal term. Grady Management contends that "landlords are not held to the more stringent requirements established by Maryland's breach

---

[17] The housing in *Green* was subsidized pursuant to section 236 of the National Housing Act (12 U.S.C. § 1715z-1 *et seq.*), which provides "periodic interest reduction payments" to the owner of a rental housing project "through payments to morgagees." 12 U.S.C. § 1715z-1 (2012); *see Green*, 28 Md. App. at 502.

of lease statute" when establishing good cause to terminate or to not renew a lease at the end of a term. We are not persuaded.

Because Mr. Epps's lease continues for successive terms, his right to possession continues for an indefinite period, and thus, until termination for good cause, he is in possession under what at that point in time is an "unexpired lease." *See Cottman*, 340 Md. at 298 ("[A] tenant in a federally subsidized housing unit . . . had a continuing right of possession to the unit for an indefinite period." (citing *Carroll v. Hous. Opportunities Comm'n*, 306 Md. 515, 525 (1986)).[18] It follows that a decision to terminate "for other good cause," effective at the end of the term, or not to renew at the end of a term is an eviction and when based only on lease violations of the quiet enjoyment nature as claimed in this case, it is essentially a breach of lease case that should be treated no differently than a mid-term

---

[18]The relevant statute in *Carroll* was 24 C.F.R. § 966.4 (lease between a Public Housing Authority and tenant). Similar to the termination requirement for the New Construction program under 24 C.F.R. § 880.607, the requirements under § 966.4 include:

> (2) Grounds for termination of tenancy. The PHA may terminate the tenancy only for:
> (i) Serious or repeated violation of material terms of the lease, such as the following:
>     (A) Failure to make payments due under the lease;
>     (B) Failure to fulfill household obligations, as described in paragraph
>     (f) of this section;
> (ii) Being over the income limit for the program, as provided in 24 C.F.R. 960.261.
> (iii) Other good cause. . . .

21

eviction. *See Swann v. Gastonia Hous. Auth.*, 675 F.2d 1342, 1347 (4th Cir. 1982)[19] ("the imposition of the good cause requirement recast all end-of-term evictions as evictions for violating the terms and conditions of the lease"). Therefore, good cause to terminate a project-based lease at the end of a lease term or successive term based on a claimed lease violation, appropriately and reasonably, should be subjected to Maryland's breach of lease standard for eviction. That conclusion is consistent with both federal and state policy and with the provision in Mr. Epps's lease that, "*any* termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement."[20] (Emphasis added). The requirement of R.P. § 8-

_____

[19] Although *Swann* and the other federal cases cited in this opinion are not binding precedent, we find them instructive and the reasoning persuasive. In *Swann,* a public housing agency administered a Section 8 Existing Housing Program under the provisions of 42 U.S.C. § 1437f and 24 C.F.R. part 882, which entitled the Swanns to a rent subsidy from the public housing agency if they rented from a landlord who participated in the Section 8 Existing Housing Program. 675 F.2d at 1343.

[20] The HUD Occupancy Handbook states under "Procedures for Terminating Tenancy and Providing Notice" that

The following procedures are the minimum standards required by HUD. Most state and/or local laws are more restrictive than HUD's minimum requirements; therefore, an owner should be aware of state and local laws governing terminations.

1. Basis for Termination.

To Terminate tenancy, an owner must establish that the basis for the termination is consistent with:

(continued...)

22

402.1 that a claimed "breach" must "warrant[] an eviction" does not, in our view, impose on a landlord seeking to terminate a project-based subsidized lease a "more stringent" demonstration of good cause than is necessary.[21]

In *Sager v. Housing Commission of Anne Arundel County*, 957 F. Supp. 2d 627 (D. Md. 2013), the tenant had a lease with an "allocation" clause indicating that any payment not designated as rent could be applied by the landlord to outstanding maintenance charges and/or late fees or legal fees. 957 F. Supp. 2d at 629-30. The court noted that the federally subsidized tenant was entitled to remain in her unit "so long as she pa[id] her rent and refrain[ed] from actions deemed, after a hearing, to be 'serious or repeated violation of the terms of conditions of the lease or . . . other good cause.'" *Id.* at 633 (quoting 42 U.S.C. §

---

(...continued)

        a. HUD-required lease provisions;

        b. Allowable lease provisions set forth in the lease for the unit occupied
        by the tenant; and

        c. Applicable state and local laws.

U.S. Dep't of Hous. & Urban Dev., *HUD Handbook 4350.3*, 8-15, (2013) *available at* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.3/43503c8HSGH.pdf. We note that the HUD Occupancy Handbook, while not entitled to full *Chevron* deference, is still entitled to a "measure of respect" under a less deferential standard because it is an agency's interpretation of its regulations, and reflects "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (internal citations omitted).

[21] In *Joy v. Daniels*, 479 F.2d 1236, 1243 (4th Cir. 1973), the tenant, while not a New Construction tenant, had a section 8 tenancy that required good cause to terminate. The court held that the landlord could not evict the tenant "except for cause under the procedural and substantive law of South Carolina."

23

1437d(*l*)(5)). The court further explained that although the failure to pay rent could subject a tenant to Maryland's summary ejectment proceedings under R.P. § 8-401, other lease violations, such as poor maintenance of the unit, "must be dealt with" through "a more fulsome proceeding" under R.P. § 8-402.1. *Id.* at 630, 638 n.8.[22]

Similar to an ejectment proceeding, a tenant holding over action is an expedited repossession action. It applies to a tenant who unlawfully holds over beyond the expiration of the lease term and therefore does not contemplate a landlord's need to show good cause to terminate. Moreover, in a project-based subsidized lease program, such as the New Construction Program, the lease term continues, rather than expires, precluding holdover status until a determination of good cause to terminate the lease has been established. *See Jeffries v. Georgia Residential Fin. Auth.*, 503 F. Supp. 610, 622 (1980) (until termination for good cause, "hold over status will not arise, and the landlord cannot gain an eviction order in state court"). We note that, in *Carter*, the tenant holding over action was initially brought together with a breach of lease action. The eviction in the tenant holding over action was upheld because good cause to terminate had been demonstrated in the holding over action and the tenant was thus deemed to be a tenant holding over. *See Carter*, 377 Md. at 602, 614. We do not see where the issue of whether the burden to show good cause to

---

[22]Not only does R.P. § 8-402.1 provide the applicable standard in establishing good cause in such situations, it is, procedurally, better suited for a fact-intensive inquiry than R.P. § 8-402 because Md. Rule 3-711 does not provide for pretrial discovery in a tenant holding over action. *See* Md. Rule 3-711 (" no pretrial discovery under Chapter 400 of this Title shall be permitted in . . . an action involving tenants holding over").

terminate at the end of the term was a lesser burden than that necessary to show good cause during the term of the lease was raised and expressly addressed in *Carter*. It is our view that it is not a lesser burden. That said, we are not holding that a holding over action based on a breach of a lease in the nature of the kind before us in this case cannot be brought based on "other good cause" to terminate effective at the end of a term. But, if that is done, there has to be a finding in the holding over action that good cause warrants an eviction.  On the other hand, it also would be appropriate (and, because of the pretrial discovery issue, perhaps better) to bring a breach of lease case together with a tenant holding over action. The R.P. § 8-402.1 case could be decided first and then, if the claimed breach warrants an eviction, the R.P. § 8-402 holding over action would follow. Moreover, if the termination is based on "other good cause," as in this case, but termination is not effective until the end of the term, the right to terminate could be obtained earlier so that, at the end of the term, the tenant is in fact holding over.

This brings us to whether the grant of summary judgment in favor of Mr. Epps was correct as a matter of law.[23] *Res judicata* and collateral estoppel "are based upon the judicial

---

[23]In its ultimate ruling on summary judgment, the circuit court did not expressly state whether *res judicata* or collateral estoppel barred the tenant holding over action, but, earlier in the hearing, the judge stated:

> I don't have this absolute positive conclusion, but it strikes me that if the jury finds a breach, but it's not enough to evict, and the tenant has the right to renew, and depriving him of the right to renew is equivalent to an eviction, that the jury's verdict should be viewed by the court as *res judicata* as to whether or not there is good cause to refuse renewal.

policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised." *Id.* (citing *Dep't. of Human Res. v. Thompson*, 103 Md. App. 175 (1995)).

*Res judicata* ("a thing adjudicated") involves

> a judgment between the same parties and their privies [that] is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit . . . .

*Alvey v. Alvey*, 225 Md. 386, 390 (1961). The doctrine of *res judicata* "'avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions'" by preventing parties from relitigating matters. *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005) (quoting *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, (1989)). For the doctrine of *res judicata* to apply: "1) the parties in the new litigation are the same or in privity with the parties to the earlier dispute, 2) the claim presented in the current action is identical to the one determined in the prior adjudication, and 3) there was a valid final judgment on the merits." *Esslinger v. Baltimore City*, 95 Md. App. 607, 616-17 (1993) (quoting *Cassidy v. Bd. of Educ.*, 316 Md. 50, 57 (1989)). If these three requirements are met, a final judgment in the previous litigation bars the subsequent claim. *Id.* at 617.

Collateral estoppel, on the other hand, "is not concerned with the legal consequences of a judgment, but only with the findings of ultimate fact, when they can be discovered, that

necessarily lay behind that judgment." *Id.* at 391 (citing *Burkett v. State*, 98 Md. App. 459, 466 (1993)). To determine whether collateral estoppel applies, four questions must be answered in the affirmative:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

> 2. Was there a final judgment on the merits?

> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Washington Suburban Sanitary Comm'n v. TKU Assocs.*, 281 Md. 1, 18-19 (1977). In considering those questions, we scrutinize the fact-finding in the prior adjudication to "determine if the issues raised in that proceeding were actually litigated, or facts necessary to resolve the pertinent issues were adjudicated in that action." *Colandrea v. Wilde Lake Comty. Ass'n, Inc.*, 361 Md. at 392 (citing *Burkett*, 98 Md. App. at 466).

In our view, whether *res judicata* or collateral estoppel is applied in this case, the result is the same. Clearly, the first and third requirements of *res judicata* and the second, third, and fourth requirements for collateral estoppel have been met in the breach of lease case. There was a final judgment, the parties are the same, and Grady Management was given a fair opportunity to be heard during the trial for the breach of lease. The only question is whether the claim and issue presented and decided in that case are identical to the issue presented in this case. The answer to that question hinges on whether the standard for

27

showing good cause to terminate, effective at the end of the term, is subject to the R.P. §8-402.1 standard that the claimed breach warrants eviction. We have held that it is.

When Grady Management sought to terminate Mr. Epps's lease in the breach of lease case, the jury found that his breach of the lease, even though substantial, did not warrant an eviction. Even to the extent that a tenant holding over claim and action under R.P. § 8-402 may differ from a claim and action under R.P. § 8-402.1, they are, in the context of this case, essentially based on the same claim. Not only was Mr. Epps not a holdover tenant when the tenant holding over action was initiated, he does not reach holdover status until good cause has been established under the R.P. § 8-402.1 standard. The breaches of the lease that the landlord now claims constitute good cause to terminate the lease at the end of the term are the same lease violations that were fairly litigated in the breach of lease case and found not to warrant an eviction. Therefore, the grant of summary judgment in Mr. Epps's favor did not constitute error.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**